**METROPOLITAN VAN AND STORAGE, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 09–473C.

United States Court of Federal Claims.

Oct. 6, 2011.

See also, 92 Fed.Cl. 232.

Joseph G. Billings, Miles & Stockbridge P.C., Baltimore, Md., for the plaintiff. With him were Nathan D. Hartland and Rita J. Piel, Miles & Stockbridge P.C., of counsel.

Christopher L. Krafchek, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division.

## OPINION

HORN, Judge.

Plaintiff Metropolitan Van and Storage, Inc. (Metropolitan) filed an application for costs pursuant to Rule 54(d) of the Rules of the United States Court of Federal Claims (RCFC) (2011) and for attorneys' fees and other expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412 (West 2011).[1] In *Metropolitan Van and Storage, Inc. v. United States*, 92 Fed.Cl. 232 (2010), this court issued an opinion on the merits of plaintiff's bid protest case and vacated the award of a contract to Guardian Moving and Storage Co. (Guardian).

## FINDINGS OF FACT

The facts of the case were fully presented in the court's earlier opinion, *Metropolitan Van and Storage, Inc. v. United States*, 92 Fed.Cl. 232, and are incorporated into this opinion. Certain facts most relevant to the plaintiff's EAJA application are repeated below, together with additional facts pertinent to this opinion. On May 9, 2008, the Military Surface Deployment and Distribution Command (SDDC) issued Request for Proposal (RFP) W81GYE–08–R–0006 (the solicitation) for the storage and management of household goods and unaccompanied baggage for the Department of Defense on the West Coast of the United States (the West Coast Contract). The West Coast Contract was to be awarded as an indefinite delivery/indefinite quantity contract for one base year, with the possibility of six option years and a single thirty month transition option, totaling nine and one-half years. The Performance Work Statement associated with the solicitation described SDDC's requirements for the storage and management of household goods and unaccompanied baggage. The evaluation factors in the solicitation were: Cost/Price, Technical and Past Performance, with the award to be "made to the responsible low priced technically acceptable offeror with acceptable past performance." The Technical Evaluation factor had five sub-factors: (1)

verification from a qualified engineer or authority that the facility does not fall within a 100–year flood plain; (2) certificate of warehouseman's legal liability insurance; (3) proof of a fire system maintenance contract; (4) evidence of maintaining a primary and secondary locator system that shows identification of lots stored; and (5) proof of ownership, lease or written commitment for sufficient warehouse space.

SDDC initially received five proposals in response to the solicitation, and subsequently made the award for the West Coast Contract to Guardian on August 14, 2008, with contract performance to commence on October 1, 2008. On August 26, 2008, after receiving a debriefing from SDDC, Metropolitan filed its initial protest at the Government Accountability Office (GAO), arguing that when SDDC reviewed Guardian's past performance, SDDC should have given Guardian a "fail" rating when in fact, SDDC gave Guardian's past performance a "pass" rating. Metropolitan also argued that SDDC unreasonably evaluated Guardian's proposal because Guardian's price was unbalanced, unrealistically low, and Guardian's proposal failed to conform to material requirements of the solicitation.

On October 6, 2008, Metropolitan filed its second protest at the GAO, alleging that Guardian's written commitment for a lease was not binding, but expired three days after submission of proposals, and was for less space than required to store up to the 15 million pounds of goods that could potentially be required during the term of the contract, including options.

On December 2, 2008, an outcome prediction conference was held by GAO, during which GAO indicated that plaintiff's first and second protests likely would be denied on all grounds, except for Metropolitan's claim that Guardian's warehouse space commitment was not binding. GAO proposed two alternative corrective actions: either (1) terminate Guardian's initial West Coast Contract and evaluate the next lowest priced

1. 28 U.S.C. § 2412 was modified in 2011 by Public Law No. 111–350, 124 Stat. 3677 (2011), section 5(g)(9)(A–B), which struck the phrase "the Contract Disputes Act of 1978" language and replaced it with the phrase "chapter 71 of title 41," in 28 U.S.C.A. § 2412(d)(2)(E) and (d)(3) (West 2011), respectively. *See* Pub.L. No. 111–350, § 5(g)(9).

offeror for responsibility and technical acceptability, and, if acceptable, award the contract to the next lowest priced, technically acceptable offeror, with acceptable past performance; or (2) review the requirements under the Technical Evaluation sub-factor 5, proof of ownership, lease or written commitment for sufficient warehouse space, and, based on a reasonable modification, amend and clarify the solicitation and solicit revised proposals from the offerors.

On December 5, 2008, GAO dismissed Metropolitan's first and second protests because SDDC agreed to take corrective action, which would render the protests moot. On December 9, 2008, SDDC terminated Guardian's contract for the convenience of the government, and extended the performance period of the incumbent contractor's (Metropolitan's) contract for the storage and management of household goods and unaccompanied baggage. On December 17, 2008, SDDC issued Amendment 0006 to the solicitation, which altered Technical Evaluation sub-factor 5 from "proof of ownership, lease or written commitment for sufficient warehouse space," to "proof of ownership or lease agreement for warehouse space. If a lease agreement is proposed, it must bind the offeror upon the award if the offeror's proposal is successful." SDDC allowed all the earlier offerors to revise their proposals.

On December 22, 2008, Metropolitan filed a third protest at the GAO, which challenged the corrective action SDDC had taken in response to Metropolitan's first and second GAO protests, alleging that Amendment 0006 to the solicitation did not substantially alter or clarify the warehouse space binding commitment requirement. GAO denied Metropolitan's third protest on March 24, 2009, concluding that the corrective action taken by SDDC had addressed the impropriety identified by the GAO. On March 27, 2009, Metropolitan filed its fourth GAO protest, requesting reconsideration of the GAO decision on the third protest. The fourth GAO protest ultimately was dismissed before a decision was issued, after plaintiff's action was filed in this court.

All four offerors who had submitted initial proposals submitted revised proposals. Af-

ter evaluation, SDDC again awarded the West Coast Contract to Guardian on March 27, 2009, and on the same day, notified Metropolitan once again, that it had not received the award. On April 9, 2009, Metropolitan filed its fifth protest at the GAO, challenging SDDC's second award to Guardian and alleging that SDDC had evaluated Guardian's proposal as improperly having acceptable past performance, that SDDC had failed to perform a price realism analysis and, therefore, had failed to reveal Guardian's unbalanced pricing, and that Guardian's proposed warehouse space did not provide sufficient warehouse space to meet the requirements in the solicitation. On April 29, 2009, the GAO dismissed the fifth protest on the grounds that Metropolitan failed to state a legally sufficient basis for a protest, but indicated that because SDDC had not yet furnished Metropolitan with sufficient information, once Metropolitan obtained more information, it could file another protest.

On May 18, 2009, Metropolitan filed its sixth protest at the GAO, renewing its allegations that SDDC had improperly evaluated Guardian's past performance because SDDC knew Guardian had failed to comply with the material requirements of another storage contract for SDDC in Hampton, Virginia, regarding which Guardian, nevertheless, was given a favorable past performance review. On June 19, 2009, Metropolitan filed a seventh protest at GAO, alleging Guardian's technical proposal did not meet the requirements of three of the Technical Evaluation sub-factors. Metropolitan subsequently filed a bid protest complaint in the United States Court of Federal Claims on July 22, 2009. The GAO dismissed Metropolitan's pending fourth, sixth, and seventh protests when Metropolitan informed the GAO it had filed a bid protest in this court. Cross-motions for judgment on the Administrative Record were filed by all parties, including by the defendant-intervenor Guardian.

The plaintiff's complaint in this court included three counts. In Count I, Metropolitan alleged SDDC had not evaluated Guardian's initial proposal or revised proposal in accordance with the evaluation criteria in the RFP. Metropolitan also alleged that Guard-

ian had submitted unacceptable price and technical proposals and that Guardian's proposal should not have received a "pass" rating on past performance. In Count II, Metropolitan alleged that SDDC acted arbitrarily and capriciously when it took corrective action, allowing Guardian another opportunity to submit a proposal regarding its commitment for warehouse space. In Count III, Metropolitan alleged that by acting arbitrarily and capriciously SDDC breached its implied-in-fact contract to treat plaintiff's proposals fairly and honestly by awarding the contract to Guardian twice.

On March 30, 2010, the court granted in part Metropolitan's motion for judgment on the Administrative Record and denied the government's and Guardian's cross-motions for judgment on the Administrative Record. The court vacated the award to Guardian under the second West Coast Contract. In its opinion, this court denied as moot the plaintiff's claims regarding the initial award pursuant to Count I because the "interim events of amending the solicitation and allowing all offerors to submit revised proposals eradicated the effects of the violation alleged, and the revised proposals were evaluated anew." *Metro. Van and Storage, Inc. v. United States*, 92 Fed.Cl. at 255. Additionally, plaintiff's allegation that SDDC had not properly evaluated Guardian's past performance for the revised proposal was rejected because Metropolitan failed to meet its high burden of showing that SDDC's determination of Guardian's acceptable past performance was without a rational basis. *Id.* at 259. Metropolitan, however, prevailed on other claims under Count I, including that SDDC's technical and price evaluations of Guardian's revised proposal were unreasonable, arbitrary and capricious, and SDDC's second award was without a rational basis. The court found that Guardian's revised technical proposal failed to comply with the requirements of the solicitation because the proposed lease was not for the potential, maximum length of the contract, and insufficient amounts of warehouse space were included in Guardian's revised proposal. SDDC's acceptance of Guardian's non-conforming, revised proposal, therefore, was found by the court to be arbitrary and capricious. *Id.* at 273.

The court concluded that because Guardian offered a lease committing to the storage of only up to 8 to 9 million pounds of storage and did not meet the requirements of the solicitation, which required a lease committing to the storage of up to 15 million pounds of storage, Guardian's submitted price was unreasonable. In sum, the court found that plaintiff should prevail on Count I and that it was arbitrary and capricious for SDDC to have accepted Guardian's price and technical proposal. *Id.* at 277.

Plaintiff's claim included in Count II was denied because the corrective action taken by SDDC was found to have conformed to the GAO recommendations, and, therefore, "SDDC's decision to issue the amendment to the solicitation and to request revised proposals was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 253. Finally, Count III, Metropolitan's implied-in-fact contract theory, was not adopted by the court. *Id.* at 249 n. 7.

After the opinion was issued, Metropolitan filed an EAJA application for the award of $213,808.00 in attorneys' fees, $1,038.00 in fees and expenses, and $2,247.00 in costs, for a total of $217,093.00. The defendant opposed Metropolitan's application for fees under EAJA in part. Subsequently, Metropolitan filed a reply brief and included a supplemental request for additional attorneys' fees of $10,692.00, increasing the total request for award of attorneys' fees and expenses to $227,785.00.

## DISCUSSION

### I. History of EAJA and EAJA Requirements

■■■ "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1357 (Fed.Cir.), *reh'g en banc denied* (Fed.

Cir.2008); *Arcambel v. Wiseman,* 3 U.S. (Dall.) 306, 1 L.Ed. 613 (1796). "Absent statute or enforceable contract, litigants pay their own attorney's fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. at 257, 95 S.Ct. 1612 (citations omitted). This has come to be known as the "American Rule," and the only exceptions to this rule are those created by Congress and a small group of common law equitable exceptions which federal courts lack the power to enlarge.[2] *See id.* at 269, 95 S.Ct. 1612; *see also Nilssen v. Osram Sylvania, Inc.,* 528 F.3d at 1357. In addition, litigants seeking to recoup litigation expenses from the United States also face the barrier of overcoming sovereign immunity. *See Chiu v. United States,* 948 F.2d 711, 714 (Fed.Cir.1991); *Gavette v. Office of Pers. Mgmt.,* 808 F.2d 1456, 1460 (Fed.Cir.1986); *Griffin & Dickson v. United States,* 21 Cl.Ct. 1, 4 (1990). Only a statutory directive waiving immunity can make the United States potentially liable in suit. *See Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

As indicated by the United States Supreme Court, "Congress enacted EAJA, Pub.L. 96–481, Tit. II, 94 Stat. 2325, in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" *Scarborough v. Principi,* 541 U.S. 401, 406, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting H.R.Rep. No. 96–1005, at 9 (1980)); *see also Gavette v. Office of Pers. Mgmt.,* 808 F.2d at 1459 (quoting H.R.Rep. No. 96–1418, at 5 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4984 (1980)) (Congress recognized that the American Rule deterred individuals and small businesses "from seeking review of, or defending against unreasonable governmental action because of the expense involved in

securing the vindication of their rights"); *PCI/RCI v. United States,* 37 Fed.Cl. 785, 788 (1997) (also quoting from H.R.Rep. No. 96–1418, at 5, *reprinted in* 1980 U.S.C.C.A.N. at 4984). When the House of Representatives considered the Equal Access to Justice Act, it provided the following rationale:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

H.R.Rep. No. 96–1418, at 9, *reprinted in* 1980 U.S.C.C.A.N. at 4988.

■■■ To address these concerns, in 1980, Congress enacted the EAJA. "The Equal Access to Justice Act (EAJA or Act) departs from the general rule that each party to a lawsuit pays his or her own legal fees." *Scarborough v. Principi,* 541 U.S. at 404–05, 124 S.Ct. 1856 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. at 257, 95 S.Ct. 1612). The purpose of the EAJA was to " 'reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney's fees, expert witness fees and other expenses against the United States.' " *Gavette v. Office of Pers. Mgmt.,* 808 F.2d at 1459–60 (quoting H.R.Rep. No. 96–1418, at 6, *reprinted in* 1980 U.S.C.C.A.N. at 4984); *see also PCI/RCI v. United States,* 37 Fed.Cl. at 788. "The primary purpose of the EAJA is to ensure that litigants 'will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.' " *Wagner v. Shinseki,* 640 F.3d 1255, 1259 (Fed.Cir.2011) (quoting *Scarborough v. Principi,* 541 U.S. at 407, 124 S.Ct. 1856) (citations and internal quotation marks omitted in original); *see also Ellis v. United States,* 711 F.2d 1571, 1576 (Fed.Cir.1983) ("EAJA's primary purpose is to eliminate legal expense as

---

**2.** The Supreme Court in *Alyeska* noted the equitable exceptions of (1) willful disobedience of a court order, (2) bad faith on the part of a losing party, and (3) the common fund or common benefit exception allowing recovery of costs

when the prevailing party is a trustee of property or is a party preserving or recovering a fund for the benefit of others in addition to himself. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. at 257–59, 95 S.Ct. 1612.

a barrier to challenges of unreasonable government action.").

In order to accomplish its purpose, EAJA made two primary changes in the then prevailing law. *Gavette v. Office of Pers. Mgmt.*, 808 F.2d at 1460 (citing H.R.Rep. No. 96–1418, at 9, 1980 U.S.C.C.A.N. at 4987). First, in 28 U.S.C. § 2412(b), the EAJA extended the existing common law and statutory exceptions to the American Rule to make the United States liable for attorney's fees just as private parties would be liable. *Gavette v. Office of Pers. Mgmt.*, 808 F.2d at 1460 (citing H.R.Rep. No. 96–1418, at 9, 17, 1980 U.S.C.C.A.N. at 4987, 4996); *see also Scarborough v. Principi*, 541 U.S. at 406, 124 S.Ct. 1856 ("First, § 2412(b) made the United States liable for attorney's fees and expenses 'to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.' "). The House Committee on the Judiciary stated that:

> Section 2412(b) permits a court in its discretion to award attorney's fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties.... Thus, under this subsection, cases involving the United States would be subject to the "bad faith," "common fund" and "common benefit" exceptions to the American rule against fee-shifting. The United States would also be liable under the same standards which govern awards against other parties under Federal statutory exceptions, unless the statute expressly provides otherwise.

*Gavette v. Office of Pers. Mgmt.*, 808 F.2d at 1460 (citing H.R.Rep. No. 96–1418, at 17, 1980 U.S.C.C.A.N. at 4996); *see, e.g., Centex Corp. v. United States*, 486 F.3d 1369, 1372 (Fed.Cir.2007); *St. Paul Fire & Marine Ins. Co. v. United States*, 4 Cl.Ct. 762, 769 (1984) (bad faith exception); *Knight v. United States*, 982 F.2d 1573, 1579–82 (Fed.Cir.1993) (common fund exception); *MVM, Inc. v. United States*, 47 Fed.Cl. 361, 363–65 (2000) (common benefit). Section 2412(b) reads:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). Prior to EAJA, many different statutes had contained specific waivers of sovereign immunity for the United States. *See Gavette v. Office of Pers. Mgmt.*, 808 F.2d at 1460. EAJA section 2412 was enacted to provide a "uniform rule" which would "make such specific exceptions unnecessary." *Id.* (citing 28 U.S.C. § 2412 (Historical and Statutory Notes)).

EAJA provides that, "unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs ... to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b). Reasonable fees and expenses shall be awarded to the prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d).

The EAJA statute also provides that:

> "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of

qualified attorneys for the proceedings involved, justifies a higher fee.).

28 U.S.C. § 2412(d)(2)(A).

■■■■ As indicated by the United States Court of Appeals for the Federal Circuit, "EAJA is a fee-shifting statute that allows a party who prevails in a civil action brought by or against the government to recover attorney's fees and costs." *Davis v. Nicholson,* 475 F.3d 1360, 1363 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2007). Because EAJA "exposes the government to liability for attorney fees and expenses to which it would not otherwise be subjected, it is a waiver of sovereign immunity." *Ed A. Wilson, Inc. v. Gen. Servs. Admin.,* 126 F.3d 1406, 1408 (Fed.Cir.1997) (citing *Ardestani v. I.N.S.,* 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991)). "[T]he traditional principle that the Government's consent to be sued 'must be "construed strictly in favor of the sovereign"....'" *United States v. Nordic Vill.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (quoting *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951))); *see also Ardestani v. I.N.S.,* 502 U.S. at 137, 112 S.Ct. 515.

■■■■ The court, however, has considerable discretion to determine what level of attorneys' fees are reasonable and the amount of hours that should be compensated. *See Hubbard v. United States,* 480 F.3d 1327, 1334–35 (Fed.Cir.2007) (In an EAJA context, "[t]he trial court has considerable discretion in determining reasonable attorney fees."); *see also RAMCOR Servs., Grp., Inc. v. United States,* 185 F.3d 1286, 1290 (Fed.Cir.1999) ("The trial judge enjoys considerable discretion to determine eligibility for an EAJA award."); *Metric Constr. Co., Inc. v. United States,* 83 Fed.Cl. 446, 450 (2008). Moreover, the court should not award fees "to the extent that the applicant ultimately fails to prove justification for each item of fee claimed[.]" *Fritz v. Principi,* 264 F.3d 1372, 1377 n. 1 (Fed.Cir.2001).

■■■■ As the United States Supreme Court indicated:

There is no precise rule or formula for making these determinations [for fee awards]. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Although in *Hensley v. Eckerhart* the Supreme Court addressed attorneys' fees available pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, the Supreme Court subsequently indicated that similar discretion by the trial court was warranted in an EAJA examination. *See Comm'r v. Jean,* 496 U.S. 154, 161, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (quoting *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. 1933) ("In *Hensley,* we emphasized that it is appropriate to allow the district court discretion to determine the amount of a fee award, given its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' The EAJA prescribes a similar flexibility."). The United States Court of Appeals for the Federal Circuit also has applied the *Hensley* approach in EAJA cases. *See Hubbard v. United States,* 480 F.3d at 1332–33; *see also Former Emps. of Motorola Ceramic Prods. v. United States,* 336 F.3d 1360, 1364 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2003); *Info. Scis. Corp. v. United States,* 88 Fed.Cl. 626, 633 n. 3 (2009) (explaining that *Hensley* has been applied by the Federal Circuit in EAJA cases).

■■■■ Eligibility for an award of attorneys' fees and expenses in a civil action under EAJA requires: (1) that an eligible claimant be a prevailing party; (2) that the government's position viewed over the entire course of the dispute was not substantially justified; (3) that no special circumstances make an award unjust; and (4) that pursuant to 28 U.S.C. § 2412(d)(1)(B), any fee application be timely submitted and supported by an itemized statement. *See* 28 U.S.C. § 2412(d)(1)(A), (B); *see also Scarborough v. Principi,* 541 U.S. at 407–08, 124 S.Ct. 1856; *Comm'r v. Jean,* 496 U.S. at 160–61, 110

S.Ct. 2316; *Libas, Ltd. v. United States,* 314 F.3d 1362, 1365 (Fed.Cir.2003).

## A. Prevailing Party

 The United States Supreme Court has stated that, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. 1933 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)) (standard is generally applicable in cases for which Congress authorizes an award of fees to a "prevailing party"); *see also Brewer v. Am. Battle Monuments Comm'n,* 814 F.2d 1564, 1567–69 (Fed.Cir.1987). According to the Supreme Court, "the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant." *Astrue v. Ratliff,* —— U.S. ——, 130 S.Ct. 2521, 2525, 177 L.Ed.2d 91 (2010); *see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. at 603, 121 S.Ct. 1835. The Federal Circuit has indicated in EAJA analysis, "[a] party prevails in a civil action if he receives ' "at least some relief on the merits of his claim." ' " *Davis v. Nicholson,* 475 F.3d at 1363 (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. at 603–04, 121 S.Ct. 1835 (quoting *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987))).

 Metropolitan, therefore, is considered the prevailing party if it can establish entitlement to relief on the merits of one or more of its claims. *See Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. 1933. Metropolitan requested numerous forms of relief, including seeking a finding that SDDC improperly had awarded the initial West Coast Contract to Guardian pursuant to Guardian's unacceptable proposal, and, in so doing, had acted arbitrarily and capriciously and without rational basis. One of Metropolitan's claims was based on alleged mistakes made by SDDC during its review of the proposals and alleged inadequacy of Guardian's proposals regarding the warehouse space requirement in the solicitation. Metropolitan requested a

permanent injunction, asked the court to terminate the award to Guardian, and to make an award to a responsible, responsive offeror, such as itself. Metropolitan also argued that the award of the second West Coast Contract by SDDC to Guardian was arbitrary and capricious and that performance under Guardian's second West Coast Contract should be enjoined. Metropolitan alleged that Guardian's revised proposal was not acceptable for past performance, technical, or price. Finally, Metropolitan requested an award of its bid and proposal costs, absent injunctive relief.

The court granted plaintiff's request to vacate the second West Coast Contract to Guardian, finding that SDDC had improperly reviewed and accepted Guardian's revised proposal. The court did not determine that the first award to Guardian was arbitrary or capricious, finding those claims to be moot, and did not grant Metropolitan's request that the court order SDDC to award the contract to the next lowest priced, technically acceptable offeror. Instead, the court allowed SDDC to proceed, either by evaluating the remaining offerors' proposals or by amending the solicitation and resoliciting proposals.

As the court determined SDDC improperly reviewed and accepted Guardian's revised proposal, Metropolitan qualifies as a "prevailing party." Plaintiff received " ' "at least some relief on the merits of [its] claim." ' " *Davis v. Nicholson,* 475 F.3d at 1363 (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. at 603–04, 121 S.Ct. 1835 (quoting *Hewitt v. Helms,* 482 U.S. at 760, 107 S.Ct. 2672)); *see also Martinez v. United States,* 94 Fed.Cl. 176, 181 (2010). Moreover, the defendant does not dispute that Metropolitan is a "prevailing party" for EAJA purposes.

## B. Substantial Justification

 After a plaintiff demonstrates it is the prevailing party, EAJA requires that the government's position viewed over the entire course of the dispute was not substantially justified, *see* 28 U.S.C. § 2412(d)(1)(B), and "[t]he burden is on the government to present a substantial justification for its actions." *Cmty. Heating & Plumbing Co. v.*

Garrett, 2 F.3d 1143, 1145 (Fed.Cir.1993) (EAJA requires the government to show that its position during the course of proceedings was "substantially justified."); *see also Scarborough v. Principi*, 541 U.S. at 405, 124 S.Ct. 1856; *Comm'r v. Jean*, 496 U.S. at 158, 110 S.Ct. 2316; *White v. Nicholson*, 412 F.3d 1314, 1315 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2005), *cert. denied*, 547 U.S. 1018, 126 S.Ct. 1570, 164 L.Ed.2d 298 (2006); *Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir.1995); *Gavette v. Office of Pers. Mgmt.*, 808 F.2d at 1465–66; *PCI/RCI v. United States*, 37 Fed.Cl. at 788–89. "Pursuant to the EAJA, a 'prevailing party' in litigation against the government is entitled to recover reasonable attorney fees and expenses unless the court finds the position of the United States in the underlying litigation was 'substantially justified.'" *Padgett v. Shinseki*, 643 F.3d 950, 953 (Fed.Cir.2011) (quoting 28 U.S.C. § 2412(d)(1)(A)). Just because the trial court finds for a plaintiff and against the government, however, does not mean the government's position was not substantially justified. *See Pierce v. Underwood*, 487 U.S. 552, 569, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ("[T]he fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified."); *see also White v. Nicholson*, 412 F.3d at 1315–16. The United States Supreme Court indicated that "a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. at 566 n. 2, 108 S.Ct. 2541; *see also Sharp v. United States*, 91 Fed.Cl. 798, 802 (2010). The Supreme Court also has stated that the meaning of "substantially justified" is not " 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. at 565, 108 S.Ct. 2541. According to the Supreme Court, to be substantially justified means "more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve."

*Id.* at 565–66, 108 S.Ct. 2541 (footnote omitted). The United States Court of Appeals for the Federal Circuit in *Gavette v. Office of Personnel Management*, 808 F.2d 1456, stated that, "substantial justification is to be decided case-by-case on the basis of the record," and has held " 'substantial justification' requires that the Government show that it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts." *Id.* at 1467. (emphasis in original). The trial court is instructed to "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d at 715 (footnote omitted). Substantial justification encompasses agency action, matters before the GAO, and plaintiff's litigation in this court. *See Doty v. United States*, 71 F.3d at 386.

■■■ The government is responsible for the words of the solicitation, which it drafted and any ambiguity arising out of it "must be construed against the government." *Metro. Van and Storage, Inc. v. United States*, 92 Fed.Cl. at 266 (citing *Turner Constr. Co. v. United States*, 367 F.3d 1319, 1321 (Fed.Cir. 2004)).

■■■ As stated by the United States Court of Appeals for the Federal Circuit:

If some substantive provision of a government-drawn contract is fairly susceptible of a certain construction and the contractor actually and reasonably so construes it, in the course of bidding or performance, that is the interpretation which will be adopted, unless the parties' intention is otherwise affirmatively revealed. This rule is fair both to the drafters and to those who are required to accept or reject the contract as proffered, without haggling. . . . If the [government] chafes under the continued application of this check, it can obtain a looser rein by a more meticulous writing of its contracts and especially of the specifications.

*States Roofing Corp. v. Winter*, 587 F.3d 1364, 1368–69 (Fed.Cir.2009); *see also Rotech Healthcare Inc. v. United States*, 71

Fed.Cl. 393, 406, *appeal dismissed,* 214 Fed. Appx. 973 (Fed.Cir.2006); *Metcalf Constr. Co., Inc. v. United States,* 53 Fed.Cl. 617, 629 (2004).

In its earlier decision in *Metropolitan,* this court determined that:

> ownership of a warehouse with sufficient available space, a lease agreement with sufficient available space, or a lease with sufficient available space contingent only on contract award was required by the solicitation, including the Performance Work Statement which provides the necessary, material requirements for the warehouse leases—how much storage space, and for how long. In this opinion, the court concludes that Guardian's proposal guaranteed less than 15 million pounds and less than 9 years, 6 months (as addressed below), and, therefore, was an unacceptable proposal.

*Metro. Van and Storage, Inc. v. United States,* 92 Fed.Cl. at 270. This court also noted that "a government agency is responsible for the language it includes in its solicitation, upon which offerors rely." *Id.* at 266. Responsibility for any ambiguity in the solicitation regarding the amount of warehouse space required was with the government. This court, therefore, found that the government-drafted solicitation allowed for an offeror to "provide virtually any storage capacity it wished," which "would have offerors proposing widely differing storage capacity, resulting in an impossible price evaluation[.]" *Id.* at 263.

The court concluded that the plaintiff relied on a reasonable interpretation of the solicitation and Performance Work Statement, and further relied on the answers provided by SDDC to offeror's question of how much storage should be reflected in the offerors' proposed leases. The court determined that, "the only reasonable interpretation of the warehouse space question and answer in Amendment 0003 is that the parties were to offer up to 15 million pounds of storage capacity so that such an amount of storage space would be available under the contract, if necessary, with no further contractual activity required." *Id.* From the record before the court, Guardian's revised proposal did not include enough space to meet the minimum needs of the solicitation. Instead of proposing enough space to store up to 15 million pounds, as required in the Performance Work Statement and Amendment 0003, Guardian's revised proposal included warehouse space with the capacity to store less than 10 million pounds. *Id.* at 262, 264.

The plaintiff argues that SDDC "was not substantially justified in arguing that offerors were not required to offer space that could accommodate 15 million pounds of space." The plaintiff asserts that in this regard, based on the court's decision, SDDC acted arbitrarily and capriciously. The government responds that despite the findings by the court, with which the government continues to disagree, the agency actions were substantially justified. In its EAJA brief, the government essentially repeats the arguments it offered in its earlier motion for judgment on the Administrative Record, that SDDC had reasonably concluded Guardian's revised proposal satisfied the solicitation's technical requirement for warehouse space and that the GAO had rejected Metropolitan's claim that Guardian's proposal offered insufficient warehouse space in its second protest to GAO. According to the defendant, SDDC understood the evaluation factors and sub-factors as not requiring 15 million pounds of storage space to be available at the time of proposal or award. Moreover, in defendant's view, Metropolitan's interpretation of the requirement to have 15 million pounds of storage space available at the time of award was unreasonable because the need for the total storage space would gradually increase over time as more goods were warehoused. Additionally, defendant attempts to explain that the agency's decision to accept a lease that was not for 9 years and 6 months, the potential, maximum length of the contract, was substantially justified "[b]ecause the solicitation did not specifically indicate that offerors were required to have a lease that covered the full performance period when they submitted their proposal." Finally, defendant quotes its earlier argument that the Performance Work Statement was not specifically incorporated into the solicitation's evaluation factors and sub-factors, and relied

on GAO decisions that "'a solicitation may establish informational, technical, administrative, or other requirements that are not included in the evaluation process.'" (citing *Alanna Orr*, B–310966.2, 2008 WL 2077928 (Comp.Gen. May 14, 2008)).

This court indicated in its earlier opinion that: "The solicitation's Performance Work Statement states, in part, '[t]he Contractor shall either own the storage facility, or shall have a lease agreement for the storage facility in effect for the potential maximum performance period of the contract, which includes all possible option periods.'" *Metro. Van and Storage, Inc. v. United States*, 92 Fed.Cl. at 271. Although the defendant argued that the 15 million pound requirement was not incorporated into the solicitation, SDDC specifically referenced the Performance Work Statement in Amendment 0003, which contained a series of questions and answers regarding the elements required in an offeror's proposal. As stated by the court, at the time of the questions and answers reflected in Amendment 0003 to the solicitation, "the Agency reiterated the 15 million pounds capacity parameter." *Id.* at 266. As noted above, the court rejected the defendant's argument and found that the Performance Work Statement was part of the solicitation, including the required length of the lease and the required available storage space necessarily offered by an acceptable offeror. *See id.* at 264–65.

The government also asserts that the GAO rejected Metropolitan's claim regarding warehouse space. The GAO, however, indicated it would sustain the second protest on the technical evaluation criteria that Guardian had "failed to meet one of the five" technical sub-factors, "Proof of ownership, lease or written commitment for sufficient warehouse space," and did not reach the issue of whether the solicitation required 15 million pounds of available warehouse space. The GAO determination addressed only the initial proposals, and not the revised proposals. Moreover, even if prior GAO decisions had found in favor of the government's position, that position would not automatically or necessarily have been substantially justified. *See Infiniti Info. Solutions, LLC v. United*

*States*, 94 Fed.Cl. 740, 749 (2010); *see also Geo–Seis Helicopters, Inc. v. United States*, 79 Fed.Cl. 74, 77–78 (2007) (holding the government's actions were not substantially justified despite numerous decisions by GAO supporting the government's position, because GAO's prior decisions were contrary to explicit regulations).

 Under the solicitation and the Performance Work Statement, the maximum period of performance under the contract could have been nine years and six months. The solicitation stated that, "[t]he period of performance is one base year with six option years and one thirty-month transition option," and "for a maximum period of nine (9) years and six (6) months." Paragraph 3.1 of the Performance Work Statement stated, in part, "[t]he Contractor shall either own the storage facility, or shall have a lease agreement for the storage facility in effect for the potential maximum performance period of the contract, which includes all possible option periods." Guardian's proposed lease for warehouse space was for a period less than the full nine years and six months. Therefore, based on the solicitation and the Performance Work Statement, Guardian's proposal was technically unacceptable. *See Metro. Van and Storage, Inc. v. United States*, 92 Fed.Cl. at 270. The defendant has not demonstrated that the evaluation by SDDC regarding the amount of warehouse space and the length of the lease term was substantially justified.

The government also argues that the contracting officer's price reasonableness evaluation was consistent with the requirements of the Federal Acquisition Regulations (FAR), 48 C.F.R. § 15.404–1(a)(1) (current as of Sept. 29, 2011), and, therefore, that the government's position was substantially justified. Although the contracting officer conducted a price evaluation, as the plaintiff argues, "[b]ecause Guardian failed to comply with the solicitation requirements, the Agency's position could not be substantially justified." Guardian's revised proposal price was determined by the agency to be the lowest price. Because SDDC evaluated a proposal that did not meet the requirements of the solicitation, however, the court found that the agency had

incorrectly determined Guardian's price to be a reasonable price, and having incorrectly evaluated the parameters of Guardian's revised proposal, the government could not properly find Guardian was the lowest priced, technically acceptable offeror. The FAR requires that a "contracting officer is responsible for evaluating the reasonableness of the offered prices." 48 C.F.R. § 15.404–1(a)(1). Without a basic understanding of what the elements of the requirements were in the solicitation, the offered prices proposed were not comparable. This court held that "the contracting officer arbitrarily and capriciously found Guardian's price proposal to be reasonable, even though, as the court has found, Guardian made a non-conforming offer." *Metro. Van and Storage, Inc. v. United States,* 92 Fed.Cl. at 277. The government's argument that it was substantially justified in SDDC's price evaluation is unavailing and the government has not met its burden to prove it was substantially justified in this regard.

## C. Special Circumstances

■ The third EAJA requirement directs a court to consider any special circumstances that would make an award of fees to the plaintiff unjust. *See* 28 U.S.C. § 2412(d)(1)(A). The United States Court of Appeals for the Federal Circuit has indicated: "This 'safety valve' helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made." *L.G. Lefler, Inc. v. United States,* 801 F.2d 387, 389 (Fed.Cir.1986). The plaintiff argues that there are no extraordinary or special circumstances in this case. The defendant does not allege any special circumstances that would prevent an award of EAJA fees. Based on the record before the court, the court likewise does not find that any relevant special circumstances exist in this case.

## D. Filing Requirements

The fourth EAJA requirement of any fee application is that the fee request be timely submitted within thirty days of final judgment and supported by an itemized statement. *See* 28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi,* 541 U.S. at 407–08, 124 S.Ct. 1856; *Impresa Construzioni Geom. Domenico Garufi v. United States,* 531 F.3d 1367, 1369 (Fed.Cir.2008). In the instant case, Metropolitan's application for EAJA fees was timely filed within thirty days of final judgment and plaintiff included an itemized accounting of the fees and costs as required.

## E. Eligibility Requirements

■ In addition to the foregoing requirements, the EAJA statute also requires a party to meet certain eligibility requirements. The party requesting EAJA fees must be an owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000.00 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed. *See* 28 U.S.C. § 2412(d)(2)(B)(ii).[3] Thus, " '[t]o qualify as a prevailing party, plaintiff must satisfy the eligibility requirements of both net worth and number of employees.' " *Al Ghanim Combined Grp. Co. v. United States,* 67 Fed.Cl. 494, 498 (2005) (quoting *Lion Raisins, Inc. v. United States,* 57 Fed. Cl. 505, 511 (2003)); *see also Missouri Pac. Truck Lines, Inc. v. United States,* 746 F.2d 796, 797–98 (Fed.Cir.1984); *Fields v. United States,* 29 Fed.Cl. 376, 382 (1993), *aff'd,* 64 F.3d 676 (Fed.Cir.1995).

■ Metropolitan is a corporation that did not employ more than 500 people and its net worth did not exceed $7,000,000.00 as of July 22, 2009, the day the bid protest was filed. On the date of filing, Metropolitan had 26 employees, and its net worth determined less than a month earlier was $490,060.00. The president of Metropolitan has indicated in a declaration that the net worth of Metropolitan did not materially change in the inter-

---

**3.** Alternatively, a party can be "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B)(i).

vening time. Therefore, Metropolitan has met the eligibility requirements to be reimbursed for attorneys' fees pursuant to EAJA, if appropriate and properly documented.

## II. Attorneys' Fees and Expenses

Metropolitan requests $213,808.00 in attorneys' fees and $3,285.00 in costs, fees, and expenses. Metropolitan also requests $10,692.00 in supplemental attorneys' fees for preparation of the response to defendant's opposition to Metropolitan's request for attorneys' fees and costs. Metropolitan's total request for award of attorneys' fees and expenses is $227,785.00. The total numbers of billable hours for which Metropolitan requests compensation are 1,108.1 hours for 2009 and 62.6 hours for 2010 for the original litigation in the United States Court of Federal Claims, and 126.4 hours for EAJA preparation in 2010. Metropolitan requests an hourly rate for attorney fees of $172.85 for hours billed in 2009 and $174.43 for hours billed in 2010, based on a Cost of Living Adjustment (COLA).[4]

### A. Cost of Living Adjustment

 Metropolitan has requested a cost adjustment for billable attorney fees for inflation. At the relevant time, the EAJA stated "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii); *see also Infiniti Info. Solutions, LLC v. United States*, 94 Fed.Cl. at 751; *California Marine Cleaning v. United States*, 43 Fed.Cl. 724, 733 (1999) ("Cost of living adjustments are specifically contemplated in the EAJA."). It is within the court's discretion to apply a COLA. *See*

*Dalles Irrigation Dist. v. United States*, 91 Fed.Cl. 689, 705 (2010).

 The court in *Lion Raisins, Inc. v. United States*, 57 Fed.Cl. 505, explained how to calculate the adjustment for inflation, noting, "[i]n calculating the COLA, the court would use the effective date of the statutory cap as its baseline. Although the EAJA was enacted in October 1981, it was amended in March 1996 to increase the hourly fee rate from $75.00 to $125.00. 28 U.S.C. § 2412(d)(1)(D)(2)(A). Thus, March 1996 would be the proper baseline to employ for plaintiff's COLA." *Lion Raisins, Inc. v. United States*, 57 Fed.Cl. at 519 (other citations omitted). As indicated by the court in *Infiniti Information Solutions, LLC v. United States*:

> To receive an adjusted award, a plaintiff must "allege[ ] that the cost of living has increased [since the enactment of EAJA in March 1996], as measured by the Department of Labor's Consumer Price Index ('CPI')," *California Marine Cleaning [v. United States]*, 43 Fed.Cl. at 733, and supply the court with relevant CPI data. *See ACE Constructors [v. United States]*, 81 Fed.Cl. [161,] 168 [ (2008) ]; *Lion Raisins [Inc. v. United States]*, 57 Fed.Cl. at 519 (citing *Weaver–Bailey Contractors, Inc. v. United States*, 24 Cl.Ct. 576, 580–81 (1991)). Such an adjustment should be freely granted. *See Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir.1988) (stating that absent "unusual circumstances," a cost-of-living adjustment should be granted in the EAJA attorneys' fees award).

*Infiniti Info. Solutions, LLC v. United States*, 94 Fed.Cl. at 751.

 Relying on the Department of Labor's Bureau of Labor Statistics Data and the Consumer Price Index,[5] Metropolitan cal-

---

4. As discussed below, plaintiff incorrectly calculated the cost of living adjustment when calculating the billing rate for the hours billed in 2009, as well as rounding down the dollars claimed in its submission for hours billed in 2009. In addition, although using the correct cost of living

adjustment when calculating the billing rate for the hours billed in 2010, plaintiff rounded down their request from $10,919.32 to $10,919.00. Plaintiff similarly rounded down all its requests for the hours billed in 2010 for preparing the EAJA application.

5. The formula for calculating the COLA hourly rate, provided below, takes the EAJA hourly rate, which was raised to $125.00 in March 1996, and adjusts it using the ratio of the current Consumer Price Index for All Urban Consumers (CPI–U) to the CPI–U in March 1996, when the current EAJA hourly rate was enacted. The formula can be represented as:

culated the change in the cost of living between March 1996 and 2009, for the original litigation. Metropolitan used the 2009 annual average for 2009 Consumer Price Index for All Urban Consumers to calculate the adjustment. As the action was filed on July 22, 2009, approximately midway through the 2009 year, this was a reasonable choice by the plaintiff. The plaintiff, however, incorrectly used the annual average for 2008, and not 2009 in their calculations. *See* United States Department of Labor, Bureau of Labor Statistics Consumer Price Index for All Urban Consumers, *available at* ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt.[6] Although the defendant did not object to the plaintiff's calculation of the COLA for the hourly rate for 2009 and 2010, Metropolitan incorrectly calculated the attorneys' hourly fee rate for 2009 using the cost of living adjustment to be $172.85. Applying the annual average from 2009 results in a figure of $172.24.[7] For 2010, Metropolitan used the average for the first four months of the 2010 Consumer Price Index for All Urban Consumers to calculate the adjustment. As the majority of the plaintiff's billing occurred between March and May of 2010, this was a reasonable choice by plaintiff. Plaintiff correctly calculated the cost of living adjustment for the first four month of 2010 to be $174.43.[8] This adjustment raises the attorneys' hourly fee rate from $125.00 to $172.24 for the hours billed in 2009; and from $125.00 to $174.43 for the hours billed in 2010.

Plaintiff argues the use of the hourly rate of $172.85 and $174.43 for 2009 and 2010 respectively, is reasonable because $174.43 is lower than the rate for the plaintiff's attorney with the lowest hourly rate. The court agrees that the use of the adjusted billing rate is reasonable, although the court applies the hourly billing rate of $172.24 for 2009 and $174.43 for 2010. After reviewing and modifying plaintiff's calculations, the court adopts the yearly hourly rate determination of $172.24 for 2009 and $174.43 for 2010 for Metropolitan's attorneys' fees. *See Infiniti Info. Solutions, LLC v. United States,* 94 Fed.Cl. at 752 (accepting the cost of living adjustment from the time EAJA was enacted to the time the action was filed). The claim, therefore, is reduced due to the incorrect calculation of the cost of living adjustment, for the 1,108.1 hours claimed in 2009 by $675.94, from $191,535.09 to $190,859.15.

While not objecting to the rates to be applied, the government objects to some of Metropolitan's fee requests on the grounds that (1) Metropolitan also requests awards for fees billed in litigation before the GAO, which occurred prior to filing of the complaint in this court, and (2) Metropolitan has made claims for certain unsupported fees.

**B. Billable Time**

■■■ The Equal Access to Justice Act states that: "[A] court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." 28 U.S.C. § 2412(b). The United States Court of Appeals for the Federal Circuit has held that " 'the Equal Access to Justice Act applies to civil actions in federal courts, and does not encompass administrative agency actions.' " *Levernier Constr., Inc. v. United States,* 947 F.2d 497, 501 (Fed.Cir.1991) (quoting *Blair v. United States,* 10 Cl.Ct. 614, 616 (1986)). The Fed-

EAJA Hourly Rate x $\dfrac{\text{Current CPI–U}}{\text{March 1996 CPI–U}}$ = COLA Hourly Rate

**6.** The calculations used by Metropolitan to calculate COLA rates for 2009:

$125.00 x $\dfrac{215.303}{155.7}$ = $172.85

**7.** The correct formula for calculating COLA rates for 2009:

$125.00 x $\underline{214.537}$ = $172.24

155.7

**8.** The formula for calculating COLA rates for 2010:

$125.00 x $\dfrac{217.267}{155.7}$ = $174.43

eral Circuit also has indicated that, "the trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried." *Oliveira v. United States*, 827 F.2d 735, 744 (Fed.Cir.1987) (footnote omitted); *see also United Partition Sys., Inc. v. United States*, 95 Fed.Cl. 42, 56 (2010); *Lion Raisins, Inc. v. United States*, 57 Fed.Cl. at 517 (quoting *California Marine Cleaning v. United States*, 43 Fed.Cl. at 731) (" 'Attorney fees and expenses incurred in litigation before the GAO thus may not be recovered under the EAJA.' "). Therefore, fees incurred for plaintiff's protests before GAO or the executive branch agency are not recoverable as EAJA fees in this court.

 The government asserts that "26 of the hourly entries, totaling 43.5 hours, for the period covering April 28 and July 16, 2009 do not reference preparation for the Court of Federal Claims litigation." The government, however, does not specify the 26 entries the defendant asserts are for GAO or other agency proceedings. The United States Supreme Court has stated: "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933. Although the court does not require precise, minute by minute accounting of an attorneys' time, it does require reasonable time accounting. "The applicant should exercise 'billing judgment' with respect to hours worked ... and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437, 103 S.Ct. 1933 (footnote omitted); *see also Hopi Tribe v. United States*, 55 Fed.Cl. 81, 102 (2002); *Applegate v. United States*, 52 Fed.Cl. 751, 768–69 (2002), *aff'd*, 70 Fed. Appx. 582 (Fed.Cir.2003), *cert. denied*, 540 U.S. 1149, 124 S.Ct. 1145, 157 L.Ed.2d 1041 (2004) (for a discussion on the quality of billing records, although not in an EAJA case); *KMS Fusion, Inc. v. United States*, 39 Fed.Cl. 593, 600 (1997). The same is true when the government challenges EAJA time claimed by a plaintiff. The government cannot make bald allegations without providing more detail and descriptions.

 Moreover, although defendant argues that all the time billed prior to Metropolitan's filing the complaint in this court should be disallowed, judges of this court have previously awarded attorneys' fees, which were incurred prior to the filing of a bid protest. *See PCI/RCI v. United States*, 37 Fed.Cl. at 790–91 (apparent low bidder on public contract initiated preaward bid protest action and after prevailing on merits, bidder applied for, and was awarded attorney fees and expenses pursuant to EAJA, including when bidder began preparing bid protest). Notably, the United States Court of Appeals for the Federal Circuit has stated: "Certainly fees for legal and factual research preparatory to Claims Court [the predecessor court to the Court of Federal Claims] litigation constitute 'fees ... incurred by [a] party in [a] civil action.' " *Levernier Constr., Inc. v. United States*, 947 F.2d at 501 n. 2 (quoting 28 U.S.C. § 2412(d)(1)(A)) (omissions in original); *see also Dalles Irrigation Dist. v. United States*, 91 Fed.Cl. at 705. The Federal Circuit in *Levernier* also indicated that "EAJA coverage may begin after the decision of and in pursuit of an appeal from the decision of a contracting officer." *Levernier Constr., Inc. v. United States*, 947 F.2d at 502.

The court finds the plaintiff's expenses and attorney time billed for preparing and filing of the complaint, including legal research in preparation of the complaint are allowable, as they directly relate to the matters before this court. Indeed, a review of the dates of the billing entries in comparison with the dates of various filings in this court and those filings which occurred at GAO during the period April 28, 2009 to July 16, 2009, reveals that many of the entries can be considered attributable to preparation for the complaint filed in the Court of Federal Claims. Although the time claimed also may have been useful for GAO proceedings, many of the entries were for time leading up to and in preparation for the filings in the Court of

Federal Claims and were legitimately preparatory to filing the complaint in this court and, thus, are allowable.

Five entries from July 10, 2009 through July 16, 2009, for a total of 4.8 hours, however, specifically reference work related to the GAO proceedings; although some of these hours also relate to work required to be performed as preparation for filing a complaint at the United States Court of Federal Claims. For example, Metropolitan claims 2.1 hours on July 10, 2009, by Mr. Joseph G. Billings for "Review and revise letter to clerk, pre-notification letter, notice to GAO, motion to file under seal." Metropolitan also claimed 0.3 hours on July 14, 2009, by Mr. Nathan D. Hartman for "Prepare COFC complaint and related notice to GAO and parties." Prenotification to this court and the parties is required prior to a bid protest filed in the Court of Federal Claims. *See* RCFC Appendix C, ¶ 2 ("plaintiff's counsel must (except in exceptional circumstances to be described in moving papers) provide at least 24–hour advance notice of filing a protest case to (a) the Department of Justice, Commercial Litigation Branch, Civil Division; (b) the Clerk, United States Court of Federal Claims; (c) the procuring agency's contracting officer by facsimile transmission only; and (d) the apparently successful bidder/offeror . . . ."). Metropolitan also claimed 1.8 hours on July 15, 2009, by Mr. Billings for "Draft letters to GAO re upcoming filing at COFC." Metropolitan additionally claimed 0.2 hours on July 16, 2009, by Mr. Billings for "Telephone conference with GAO attorney re dismissal of protests if file in COFC." Because the GAO rejects jurisdiction over the case upon filing of a bid protest in the United States Court of Federal Claims, notice to GAO upon filing a Court of Federal Claims case also is appropriate when filing in this court.

One entry however, relates to work apparently only before the GAO. Metropolitan claims 0.4 hours on July 13, 2009, by Mr. Billings for "Telephone conference with GAO attorney advisor re release of GAO decision on request for reconsideration; draft email to client; draft email to Army and Guardian's counsel re week or two before release of GAO decision." Because this submission suggests the work may have been for work only at the GAO, versus work at this court, plaintiff's claim will be reduced by 0.4 hours. In addition, regarding the submission for 2.1 hours on July 10, 2009, by Mr. Billings for "Review and revise letter to clerk, pre-notification letter, notice to GAO, motion to file under seal," a portion of the submission apparently relates to work only before the GAO, and, therefore, a portion of the plaintiff's submission, 0.5 hours, will be reduced from plaintiff's claim. Therefore, plaintiff's claims in the amount of 254.4 hours for attorney's fees performed prior to the filing of the complaint are allowable, minus 0.9 billable hours for the work plaintiff performed for plaintiff's case at the GAO in 2009 for a total of 253.5, for the reasons discussed above and in greater detail below.

Defendant also argues that a total of 94.5 hours billed and claimed by the plaintiff, are vague, unsupported, or unnecessary and "provide no guidance in allocating attorney work to various claims and issues." For time which defendant only identifies as not clearly defined, the defendant urges that, "[f]or time that is not segregated, the Court should reduce the award to reflect [Metropolitan's] minimal success, keeping in mind that the extent of a plaintiff's success is a 'crucial factor in determining the proper amount of an award of attorney fees.'" (quoting *Hubbard v. United States*, 480 F.3d at 1333). Defendant, therefore argues that these hours should be rejected by this court. As examples, the government cites to plaintiff's claims such as the July 23, 2009 entry by Joseph Billings, "Review protest decisions by Judge Horn," and the August 11, 2009 entry by Ms. Rita J. Piel of "Conference with J. Billings and continue working on Memorandum" as examples of unsupported claims. Plaintiff disagrees, although stating, "even though some entries are more general, it is clear within the context of other entries which pleading counsel was working as it relates to this case." Plaintiff responds that "there are no unsupported attorney fees."

As discussed above, the United States Supreme Court has indicated that: "Plaintiff's counsel, of course, is not required to record

in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart,* 461 U.S. at 437 n. 12, 103 S.Ct. 1933.

 Plaintiff's records are not all very detailed, however, as stated by a Judge of the Court of Federal Claims, although not in an EAJA case:

the court agrees that some of the entries in the billing records are somewhat cryptic or short on details. In at least some instances, however, the lack of detail is cured by cross-checking the time sheets for the various attorneys who worked on this case and by reviewing docket entries to determine what specific filings were being made at particular times. . . .

In particular, the court finds that, given the overall level of detail, the fact that some of the entries cited by defendant do not list subjects is not disqualifying. *See KMS Fusion,* 39 Fed.Cl. at 600 ("As a practical matter, certain tasks performed by attorneys are not amenable to issue-based recordkeeping. For example, for an attorney to attempt to break down the time spent drafting a complaint on an issue-by-issue basis would not be productive."). In the court's view, this conclusion is consistent not only with the Supreme Court's instructions in *Hensley* and the prior jurisprudence in this circuit, but also with the overarching mandate that the fees awarded here be "reasonable."

*Applegate v. United States,* 52 Fed.Cl. at 769–70. Moreover, this court agrees that "[a]bsent some specific showing of abuse, the Court will not second-guess counsel's decision to use attorneys ... for work which counsel reasonably deemed suitable for such professionals." *First Fed. Savings and Loan Ass'n of Rochester v. United States,* 88 Fed.Cl. 572, 588 (2009).

Despite defendant's arguments, after review of plaintiff's submissions, defendant's cited examples and the other entries submitted by plaintiff, which perhaps could have been more specific to avoid the current dispute, plaintiff's request for reimbursement in this category are determined by the court to be related to filing the complaint in this court

and to preparation of the case before the court. The court concludes that plaintiff should be compensated for the plaintiff's claims totaling 94.5 hours, some of which are clear and some of which are explained by reference to other billing entries in the same time frame, regarding the same subject matter.

## C. Limited Success

 The defendant also argues that "[Metropolitan's] success was minimal and the amount of hours spent upon its non-successful arguments was excessive," and that "any award of fees should reflect this minimal success." Defendant states that Metropolitan's "shot-gun litigation strategy and overreaching claims resulted in minimal success," and that, "the Court did not rely upon any of [Metropolitan's] unsuccessful arguments to determine that SDDC's technical and price evaluation violated applicable procurement regulations." Defendant, therefore, asserts that Metropolitan achieved only limited success on the claims alleged in their complaint, and that a total of 410.5 hours of fees claimed by plaintiff should be disallowed. Plaintiff responds that Metropolitan achieved substantial success. " 'The most critical factor' a court must consider in determining whether to adjust an award of attorneys' fees is 'the degree of success obtained' in the litigation." *United Partition Sys., Inc. v. United States,* 95 Fed.Cl. at 56 (quoting *Hensley v. Eckerhart,* 461 U.S. at 436, 103 S.Ct. 1933). According to the United States Supreme Court, the trial court has broad discretion when evaluating the success of a plaintiff's claims. The Supreme Court, however, has offered some guidance, stating:

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. *See Davis v. County of Los Angeles,* 8 E.P.D. [Employment Practices Decisions] ¶ 9444,

at 5049 (C.D.Cal.1974). Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

. . .

■■■■ There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Hensley v. Eckerhart,* 461 U.S. at 435–37, 103 S.Ct. 1933 (footnotes omitted). The Supreme Court in *Hensley* also stated, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440, 103 S.Ct. 1933. *Hensley* requires only that the plaintiff achieve "substantial relief," not that there be an identity between the relief sought and the relief granted. *Id.; see also Info. Scis. Corp. v. United States,* 88 Fed.Cl. at 633; *Loomis v. United States,* 74 Fed.Cl. 350, 359 (2006). Based on the guidance in *Hensley,* each case must be evaluated on its own merits. Moreover, "[a] plaintiff can obtain 'excellent results' even if it lost on some claims, and 'the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.'" *United Partition Sys., Inc. v. United States,* 95 Fed.Cl. at 57

(quoting *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. 1933).

■■■■ Metropolitan alleged three counts in its complaint. The court found, in part, for the plaintiff on Count I, determining that SDDC had acted arbitrary and capriciously when it evaluated Guardian's revised proposal as acceptable under the Technical Evaluation and Price Evaluation factors included in the solicitation and Performance Work Statement and awarded the contract to Guardian. *See Metro. Van and Storage, Inc. v. United States,* 92 Fed.Cl. at 270, 273, 277. The court, however, found plaintiff's claims regarding the initial award to Guardian moot, *id.* at 255, and found that SDDC had not acted arbitrarily or capriciously in evaluating Guardian's past performance in its revised proposal. *Id.* at 259. Regarding Count II, the court found that SDDC had not acted arbitrarily and capriciously regarding the corrective action taken. *See id.* at 254–55. As to Count III, the court did not adopt the plaintiff's implied-in-fact contract theory. *See id.* at 249 n. 7. Although Metropolitan did not prevail on each of the theories alleged in the complaint, Metropolitan was successful in achieving the ultimate relief it sought, having the second contract award to Guardian vacated in response to plaintiff's bid protest.

■■■■ Procurement actions only should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D) (2006). The United States Court of Appeals for the Federal Circuit has indicated, "[a]mong the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1350 (Fed.Cir. 2004) (quoting *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.), *reh'g denied* (Fed.Cir.2000)); *see also Blue & Gold Fleet, L.P. v. United States,* 492 F.3d 1308, 1312 (Fed.Cir.2007)

("[T]he inquiry is whether the [government's] procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed.Cir.2005) 5 U.S.C. § 706(2)(A) (2000))). As noted by the United States Court of Appeals for the Federal Circuit: "The 'disappointed bidder bears a "heavy burden" of showing that the award decision "had no rational basis."'" *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed.Cir.2001) (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C.Cir.1994) (quoting *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973))); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed.Cir.2009).

■■■ "Effective contracting demands broad discretion.... Accordingly, agencies 'are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government.'" *Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d 955, 958–59 (Fed.Cir.1993) (quoting *Tidewater Mgmt. Servs., Inc. v. United States*, 216 Ct.Cl. 69, 573 F.2d 65, 73 (1978)); *see also E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed.Cir.1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government."); *Cybertech Group, Inc. v. United States*, 48 Fed.Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations.").

■■■ As explained by a Judge of this court, "[t]his is a highly deferential standard of review, and the Supreme Court has cautioned that the 'court is not empowered to substitute its judgment for that of the agency.'" *Madison Servs., Inc. v. United States*, 92 Fed.Cl. 120, 125 (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)), *motion for relief from judgment denied*, 94 Fed.Cl. 501 (2010); *see also Precision Standard, Inc. v. United States*, 69 Fed.Cl. 738, 744 ("Under this 'highly deferential' standard

of review [arbitrary, capricious, or an abuse of discretion], the court must sustain an agency's award if it has a rational basis."), *recons. denied*, 71 Fed.Cl. 216 (2006), *aff'd*, 228 Fed.Appx. 980 (Fed.Cir.2007) (citations omitted). A "disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d at 1333 (quoting *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d at 1169).

As noted in *Hensley v. Eckerhart*, 461 U.S. at 435, 103 S.Ct. 1933, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* Although presenting alternative arguments, plaintiff achieved success in its fundamental goal of having the award vacated, which can be described as substantial, perhaps even exceptional success, given the vacation of Guardian's contract, hardly as defendant would characterize it, "minimal success."

In support of its argument that plaintiff's success only was minimal, the defendant presents a one page table of 410.5 hours, broken down into seven general categories, and seven sub-categories, with the number of hours the defendant proposes should be disallowed. The seven general categories of claims that the government alleges should be disallowed are: the complaint, memorandum supporting complaint, plaintiff's motion for judgment on the Administrative Record, supplemental statement of fact, joint stipulations of facts, plaintiff's response to defendant's motion for judgment on the Administrative Record, and plaintiff's response to Guardian's motion for judgment on the Administrative Record. The sub-categories include: past performance, corrective action, unbalanced pricing, statement of facts, mootness, general, and not clearly defined. Defendant provides very little information about how it calculated which hours allegedly were expended on unsuccessful arguments in plaintiff's request for fees, saying only that its calculations are "derived directly" from Metropolitan's EAJA application and provide only a single example of their methodology.[9]

---

9. The example provided in defendant's response states: "We only include hours that clearly relate

to [Metropolitan's] non-successful claims. For instance, on July 2, 2009, Mr. Billings' entered

Defendant first points to a total of 51.5 hours plaintiff claims should be compensated regarding preparation of the complaint, arguing these hours should be disallowed. Within the 51.5 hours defendant identifies, defendant argues that 4.7 hours should be reduced from the plaintiff's claims for fees for arguments associated with past performance and that 5.5 hours should be disallowed for arguments relating to the corrective action, as well as proposing that another 17.6 hours for unbalanced pricing should be reduced from plaintiff's claim and 23.7 hours should be disallowed for the statement of facts associated with the complaint. Despite breaking out the hours to be disallowed, the defendant provides no calculations or rationale as to why these hours should be disallowed, rather arguing generally that Metropolitan had limited success and plaintiff's compensation should be reduced to reflect this limited success.

Defendant also claims that 17.7 hours of plaintiff's claim regarding the memorandum supporting the complaint should be disallowed, identifying 6.9 hours for arguments related to past performance, 7.4 hours related to the corrective action, and that 3.4 hours that should be disallowed for hours for unbalanced pricing and reduced from plaintiff's claim. Similar to the complaint, defendant, without providing justification, argues that Metropolitan achieved limited success and these hours should be reduced to reflect this limited success.

Next, the defendant identifies a number of plaintiff's claims regarding the plaintiff's motion for judgment on the Administrative Record, which defendant argues should not be compensated and includes a total of 151.5 hours. The defendant argues that 54.4 hours related to past performance should be disallowed, 5.9 hours related to plaintiff's arguments regarding unbalanced pricing should be reduced from plaintiff's claim, 6.7 hours related to arguments regarding the corrective action should be removed, 2.3 hours for claims related to mootness, and finally, 82.2 hours plaintiff claim should be disallowed for

"general" reasons. The defendant also identifies plaintiff's supplemental statement of fact as including claims for which plaintiff should not be compensated, totaling 44.4 hours. Defendant argues that 16.7 hours claimed by plaintiff should be disallowed for arguments related to past performance, that 2.5 hours claimed by plaintiff for arguments related to the corrective action should be reduced from plaintiff's claim, and that another 25.2 hours which relate to "general" reasons should be disallowed. In both cases, defendant repeats the argument that Metropolitan achieved limited success and these hours should be reduced to reflect this limited success.

The defendant also argues that plaintiff's claim should be reduced by 95.4 hours regarding the joint stipulations of facts. Defendant claims that Metropolitan's billing was "unnecessary and excessive because counsel for Guardian offered to draft the JSOF [joint stipulations of facts]," and because Metropolitan's counsel had already "spent considerable time drafting" a supplemental statement of facts. The court notes, however, the parties were unable to agree on the organization, structure, and what was to be included in the joint stipulations of facts. Moreover, the parties engaged in rounds of revisions and finally required a further court order detailing the format and what was to be included in the stipulations. Moreover, just because counsel for the intervenor, Guardian, offered to draft the joint stipulations of facts does not obviate the need for plaintiff's counsel to undertake work to develop and revise the joint stipulations of facts. Under these circumstances, the plaintiff's fee requests for the joint stipulations of facts are not unreasonable, and are fully allowable.

Finally, defendant argues that 25 hours plaintiff claims for work on plaintiff's response to defendant's motion for judgment on the Administrative Record should be disallowed, and similarly, 25 hours plaintiff claims for work on plaintiff's response to Guardian's motion for judgment on the Administrative Record should be disallowed.

3.2 hours for 'revise complaint re past performance issues.' The 3.2 hours were counted in the chart above under '[sic] Document (complaint),

Issue (past performance), Total Hours (4.7).' " (internal citation omitted).

For both of the these arguments, defendant asserts that the plaintiff's claims are not presented on an issue-by-issue basis and does not present clear enough detail to assign work to plaintiff's unsuccessful claims. Defendant also alleges that plaintiff's claims are "not clearly defined." As noted above "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933. Plaintiff's attorneys' hours were sufficiently explained in their entries to identify the subject matter.

In addition to defendant's one page table of plaintiff's claims defendant alleges should be not compensated, the defendant also argues that not all of plaintiff's arguments were successful, and therefore, the court should not compensate plaintiff for the above identified hours related to unsuccessful arguments regarding past performance, unbalanced pricing, mootness, and corrective action. Although plaintiff's arguments regarding Guardian's past performance were not successful, the hours claimed for plaintiff's claim regarding past performance, "involve a common core of facts or [was] based on related legal theories." *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. 1933. The development of plaintiff's filings included research, writing and a common body of factual and historical information required for the successful claims urged by the plaintiff. In a concurrence to the opinion in *Hensley,* Justice Brennan noted that litigants "must often advance a number of related legal claims in order to give plaintiffs the best possible chance of obtaining significant relief. As the Court admits, '[s]uch a lawsuit cannot be viewed as a series of discrete claims.' And even where two claims apparently share no 'common core of facts' or related legal concepts, the actual work performed by lawyers to develop the facts of both claims may be closely intertwined." *Id.* at 448, 103 S.Ct. 1933 (Brennan, J., concurring in part, dissenting in part) (internal citations omitted). The plaintiff's arguments on past performance, albeit unsuccessful, were integral to plaintiff's litigation strategy that Guardian's

proposal was unacceptable and that it was arbitrary and capricious for SDDC to accept the proposal. Furthermore, the plaintiff's arguments regarding past performance were not frivolous or without any merit. Rather, the court concluded that "plaintiff has not met its ' "heavy burden" ' of showing that SDDC's determination that Guardian had acceptable past performance ' "had no rational basis." ' " *Metro. Van and Storage v. United States,* 92 Fed.Cl. at 259 (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1333 (quoting *Saratoga Dev. Corp. v. United States,* 21 F.3d at 456)).

Defendant also alleges that plaintiff should not be awarded fees for its arguments relating to SDDC's alleged unbalanced pricing evaluation. Defendant argues that "the Court did not rely upon any of [Metropolitan's] unsuccessful arguments to determine that SDDC's technical and price evaluation violated applicable procurement regulations." Defendant appears to assume that plaintiff's argument regarding unbalanced pricing would have been unsuccessful. The court, however, did not reach an analysis of the asserted unbalanced pricing numbers because the court determined that SDDC arbitrarily and capriciously found Guardian's price proposal to be reasonable, even though Guardian made a non-conforming offer.

In addition, preparation by plaintiff regarding arguments related to unbalanced pricing, like with respect to past performance, related to SDDC's evaluation of Guardian's revised proposal and to a "common core of facts or [ ] based on related legal theories," *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. 1933, for which the plaintiff needed to develop the same strategy, perform the same research and craft the same arguments. Likewise, plaintiff's claims regarding arguments for the corrective action and for the arguments regarding mootness related to the "common core of facts or [ ] based on related legal theories," and should be fully compensated. Moreover, plaintiff's success was not limited, even though some of plaintiff's arguments were not adopted by the court. Plaintiff successfully carried its "heavy burden" that the government had

acted arbitrarily and capriciously which resulted in the government having to vacate the award to Guardian. Alternative arguments presented in support of claims are well recognized as acceptable and common practice. Given plaintiff's ultimate success, plaintiff's counsel should not be penalized for using this technique. Plaintiff's primary goal was to void the award to Guardian and the plaintiff was successful in this regard, despite the fact that the standard for achieving injunctive relief in a bid protest is high. Therefore, plaintiff's "attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. at 436, 103 S.Ct. 1933, and no reduction will be made to the plaintiff's award, as the hours objected to by defendant were "reasonably expended on the litigation."

In sum, the court awards plaintiff attorneys' fees for 1,169.8 hours billed for the litigation. As noted above, the court did not award a total of 0.9 billable hours for work plaintiff performed which was more clearly associated with litigation before the GAO in 2009. Using the cost of living adjustment of $172.24 for the hours billed in 2009, and the cost of living adjust of $174.43 for the hours billed in 2010, the court awards the plaintiff $201,623.45 in attorneys' fees.[10]

### D. EAJA Fees for Work on EAJA Fee Claim

 Plaintiff also requests attorneys' fees in the amount of $22,046.00 for 126.4 hours spent preparing the EAJA request. The plaintiff applied the 2010 cost of living adjustment for the first four months of 2010 for a billing rate of $174.43.[11] The defendant alleges "[Metropolitan's] current EAJA fee request improperly contains fees for time spent considering the EAJA fee issues," and argues the court should dismiss these fees as premature, because, according to the defendant, a claim for EAJA fees "can only be brought if the Court grants [Metropolitan's]

EAJA application." The defendant is incorrect. Both the United States Supreme Court and the United States Court of Appeals for the Federal Circuit have indicated that a court may make an award for legal fees for the work on the EAJA claim when determining the original EAJA fee claim. The Supreme Court in *Scarborough v. Principi*, 541 U.S. 401, 124 S.Ct. 1856, noted that "a party who prevails in fee litigation under EAJA may recover fees for legal services rendered during the fee litigation even if some of the Government's positions regarding the proper fee were 'substantially justified,' i.e., the district court need not make a second finding of no substantial justification before awarding fees for the fee contest itself." *Scarborough v. Principi*, 541 U.S. at 419 n. 6, 124 S.Ct. 1856 (citing *Comm'r v. Jean*, 496 U.S. at 160–62, 110 S.Ct. 2316); *see also Wagner v. Shinseki*, 640 F.3d at 1259. Regarding the calculation of fees for work on the EAJA claim, the Federal Circuit in *Wagner v. Shinseki* noted that:

> When calculating a supplemental fee award, a court is required to consider "the relationship between the amount of the fee awarded and the results obtained" through the initial EAJA application. Thus, supplemental fees should be denied "to the extent" that a claimant's defense of his original fee application proves unsuccessful. Conversely, however, supplemental fees should be granted to the extent that a claimant successfully defends his original fee application.

*Wagner v. Shinseki*, 640 F.3d at 1259–60 (quoting *Comm'r v. Jean*, 496 U.S. at 163 n. 10, 110 S.Ct. 2316) (footnote omitted).

 The United States Court of Appeals for the Federal Circuit also has indicated that a plaintiff is "entitled to attorney fees incurred throughout the litigation, including those incurred in preparation and defense of the fee application to the extent those fees are defensible." *Fritz v. Principi*, 264 F.3d

---

**10.** The court reached this result by multiplying $172.24 times 1,107.2 hours (0.9 hours less than originally claimed) for 2009 for $190,704.13, and multiplied $174.43 times 62.6 for 2010 for $10,919.32, and adding $190,704.13 and $10,919.32 for a total amount of $201,623.45.

**11.** The plaintiff incorrectly calculated the amount of fees. The 126.4 hours multiplied by $174.43 results in $22,047.95, not $22,046.00. The court will use the correct figure of $22,047.95.

at 1377 (footnote omitted); *see also Info. Scis. Corp. v. United States,* 88 Fed.Cl. at 635 (a claimant is "entitled to fees incurred in preparation and defense of the fee application."). Therefore, EAJA preparation fees may be included in a claim for EAJA fees and review all fee requests in one review is far more efficient and avoids a second EAJA litigation. Moreover, "[t]o deny a litigant all supplemental fees simply because the defense of his original fee application was not wholly successful unjustifiably dilutes the value of the original EAJA fee award and is contrary to the fundamental objectives of the EAJA." *Wagner v. Shinseki,* 640 F.3d at 1260.

■■■ "[T]o the extent that the applicant ultimately fails to prove justification for each item of fee claimed, charges generated in defense of such unfounded fee claims are not recoverable." *Fritz v. Principi,* 264 F.3d at 1377 n. 1; *see also Comm'r v. Jean,* 496 U.S. at 163, 110 S.Ct. 2316; *Wagner v. Shinseki,* 640 F.3d at 1259–60. In *Prowest Diversified, Inc. v. United States,* 40 Fed.Cl. 879 (1999), the court found that "[a]ttorney fees incurred in assembling an EAJA application, however, are reimbursable to plaintiff only on a *pro rata* basis." *Id.* at 889; *see also Skip Kirchdorfer, Inc. v. United States,* 16 Cl.Ct. 27, 34 (1988) ("a successful applicant is entitled to a *pro rata* share of the attorneys' fees and expenses incurred in preparation of its EAJA application."). This adjustment prevents the award of fees that went toward preparing the EAJA claim for those portions of the claim that were not successful. In *Prowest Diversified, Inc. v. United States,* the court determined that the plaintiff recovered 73.5% of its fees claimed, *id.* at 890, and the court applied "this success rate to the hours plaintiff's counsel spent on the EAJA application." *Id.*

The Federal Circuit, in *Wagner v. Shinseki,* approved of this approach, noting that, "[b]ecause *Hensley* requires a court to calibrate the amount of attorney fees to the degree of success a claimant has achieved, it is generally appropriate to make an award of supplemental fees that is commensurate with the degree of success obtained on the original fee application." *Wagner v. Shinseki,*

640 F.3d at 1260. The Federal Circuit cited examples from other United States Courts of Appeal awarding claimants the same percentage of supplemental fees that claimants were awarded in the original fee applications. *Id.* For example, the Federal Circuit in *Wagner* noted that in *Schwarz v. Sec'y of Health & Human Services,* 73 F.3d 895, 909 (9th Cir. 1995), the Ninth Circuit affirmed "an award of 50 percent of the supplemental fees sought by a claimant where she obtained approximately 50 percent of the fees claimed in her initial fee application," *Wagner v. Shinseki,* 640 F.3d at 1260, and the *Wagner* court also noted that the Ninth Circuit had similarly concluded in *Thompson v. Gomez,* 45 F.3d 1365, 1367–69 (9th Cir.1995), "that a district court properly awarded 87 percent of the supplemental fees requested where claimants received 87 percent of the fees sought in their original fee application." *Wagner v. Shinseki,* 640 F.3d at 1260.

■■■ Applying the same approach to the current case, the claim for EAJA application fees will be reduced by the same percentage as the overall award of EAJA attorneys' fees was reduced. There were a total of 1,108.1 hours billed by Metropolitan's attorneys in 2009 and 62.6 hours in 2010, not including attorneys' fees for EAJA preparation. The court reduced a total of 0.9 hours from 2009 for hours billed which related exclusively to the GAO proceedings. This reduced the total hours for original litigation from 1,170.7 hours to 1,169.8 hours, and represents a reduction of 0.07%. Metropolitan was billed a total of 126.4 hours for EAJA preparation. The hours billed for EAJA preparation, therefore, will be reduced on a *pro rata* basis by the same represented proportion, or by 0.07%, from 126.4 hours to 126.3 hours. This is a 0.1 hour reduction, which is multiplied by the adjusted hourly rate of $174.43 creating a total reduction of $17.44 from the amount plaintiff claims for preparation of the EAJA claim. Subtracting $17.44 from $22,047.95, the plaintiff is awarded $22,030.51 in attorneys' fees for preparation of the EAJA claim.

### E. Bill of Costs—Other Fees and Expenses

RCFC 54(d)(1) provides in part that "[c]osts—other than attorney's fees—should

be allowed to the prevailing party to the extent permitted by EAJA, 28 U.S.C. § 2412(a)(1)." RCFC 54(d)(1) (2011). EAJA provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A); *see also Oliveira v. United States*, 827 F.2d at 741.

 The prevailing party has the obligation to provide documentation of the costs it requests. *See Asphalt Supply & Serv., Inc. v. United States*, 75 Fed.Cl. 598, 602 (2007) (citing *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 193 F.R.D. 26, 35 (D.P.R.2000), *aff'd*, 295 F.3d 108 (1st Cir. 2002)). Metropolitan filed its Bill of Costs requesting the costs of research, delivery services, and attorney travel totaling $1,038.00, and costs for filling with the Clerk of the court, transcripts, and certification or duplication of papers used in case totaling $2,247.00. Defendant does not raise any objection to the reimbursable costs, fees, or expenses claimed by the plaintiff.

 To tax a requested cost, the judge, or the clerk as the court's designee, must find that it is a necessary litigation expense and that the amount to be taxed is reasonable. *Soler v. Waite*, 989 F.2d 251, 255 (7th Cir.), *reh'g denied* (7th Cir.1993). A Judge of this court has noted that "[u]nder the Equal Access to Justice Act ('EAJA'), 28 U.S.C. § 2412, the Federal Circuit has rejected the claim that parties could not recoup expenses for photocopying, printing and binding of briefs, telephone, postal, and overnight delivery services." *Hopi Tribe v. United States*, 55 Fed.Cl. 81, 100 (2002) (citing *Oliveira v. United States*, 827 F.2d at 743–44 (in turn citing *Int'l Woodworkers of Am. v.*

*Donovan*, 792 F.2d 762, 767 (9th Cir.1985))) (footnote omitted). The trial court in *Hopi Tribe v. United States* also indicated that "[u]nder the EAJA, this court has awarded administrative expenses and costs such as the 'recovery of copying, delivery services, travel, research services, telephone, and postage costs, as well as other expenses routinely incurred by attorneys, assuming they are documented and reasonably necessary to prosecution of the claim.'" *Hopi Tribe v. United States*, 55 Fed.Cl. at 100 (quoting *R.C. Constr. Co., v. United States*, 42 Fed.Cl. 57, 63–64 (1998)). The plaintiff requests $315.00 for delivery costs. The court finds delivery expenses are allowable as a necessary part of this litigation, and awards Metropolitan delivery costs of $315.00.

 RCFC 54(d)(1)(A) requires vouchers, receipt, or invoices to be attached as exhibits. Providing sufficient documentation provides the court with the necessary information required to support a request for claimed expenses. "Standard expenses include ... travel expenses." *Info. Scis. Corp. v. United States*, 78 Fed.Cl. at 680 n. 5. Plaintiff requested $44.00 for attorney travel expenses, which were uncontested by the defendant, and the plaintiff provided sufficient documentation in the form of receipts. Plaintiff, therefore, is awarded the $44.00 claimed.

As noted above, under EAJA, this court has awarded administrative expenses and costs such as "research services." *Hopi Tribe v. United States*, 55 Fed.Cl. at 100; *see also R.C. Constr., Co. v. United States*, 42 Fed.Cl. 57, 63–64 (1998) (citing *Prowest Diversified, Inc. v. United States*, 40 Fed.Cl. at 888) (awarding research services); *KMS Fusion, Inc. v. United States*, 39 Fed.Cl. at 605–06. Plaintiff requested $679.00 for Lexis Nexis research services, which plaintiff documented with its application, and defendant did not contest. Plaintiff, therefore, is awarded $679.00.

EAJA allows costs "as enumerated in section 1920 of this title." 28 U.S.C. § 2412(a)(1). Pursuant to 28 U.S.C. § 1920(1), a judge or clerk of any court of the United States is allowed to tax as costs the

"[f]ees of the clerk and marshal." 28 U.S.C. § 1920(1) (2006). The amount that the Clerk of this court may charge as the filing fee is governed by 28 U.S.C. § 1926, which provides that the fees are to be prescribed by the Judicial Conference of the United States. When Metropolitan filed the complaint, the filing fee was set at $250.00, and, therefore, Metropolitan is awarded $250.00, for the cost of the filing fee paid on July 22, 2009.

The court may tax costs for duplication of papers necessarily obtained for use in the case, if the costs are reasonable. *See* 28 U.S.C. § 1920(4); *Fogleman v. ARAMCO,* 920 F.2d 278, 286 (5th Cir.1991). Documents filed with the court were necessarily obtained for use in the case. *Friedlander v. Nims,* 583 F.Supp. 1087, 1088 (N.D.Ga.), *appeal dismissed sub nom. F/S Commc'ns v. Gulf Coast,* 747 F.2d 1467 (11th Cir.1984). At the time the court permitted costs to be taxed for up to five copies of each pleading, dispositive brief, or other document that is filed with the court. RCFC Appendix, Form 4, Bill of Costs. Exhibit 1 to plaintiff's bill of costs consists of an itemized list of the litigation documents that plaintiff copied. Plaintiff requests a total of $1,318.00 for duplication of papers. As plaintiff has not requested more than five copies of each pleading, dispositive brief, or other document and defendant has not opposed this amount, or the number of copies, $1,318.00 will be awarded to plaintiff.

Plaintiff finally requests $679.00 for transcripts of court proceedings. The court may tax the cost of transcripts of court proceedings if the transcripts were necessarily obtained for use in the case, and the costs are reasonable. *See* 28 U.S.C. § 1920(2); *see also Chore-Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 781 (Fed.Cir.1983). Exhibit 1 to plaintiff's bill of costs consists of an itemized list of the transcripts that were requested, totaling $679.00. The amount of $679.00 that plaintiff requests was not opposed by defendant and is considered by the court to be reasonable; therefore, the amount of $679.00 will be awarded to plaintiff. In sum, plaintiff is awarded $3,285.00 for costs, fees, and expenses.

## CONCLUSION

Metropolitan is awarded attorneys' fees in the amount of $201,623.45 for the original litigation and $22,030.51 in attorneys' fees for the preparation of the EAJA claim, plus costs, fees, and expenses totaling $3,285.00, for a total of $226,938.96. The Clerk of the Court shall enter **JUDGMENT** for plaintiff in the amount of $226,938.96.

**IT IS SO ORDERED.**